| | | |
|---|---|---|
| **HARRY DOYLE TURLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 11-CV-0030-CVE-FHM** |
| | ) | |
| **JULIE CAROL STILWELL and UNITED** | ) | |
| **FINANCIAL CASUALTY COMPANY,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Now before the Court is Plaintiff's Motion to Remand and Brief in Support (Dkt. # 11).

Plaintiff Harry Doyle Turley originally brought this action in the District Court in and for Tulsa

County, State of Oklahoma. Dkt. # 2-2. On January 13, 2011, defendant United Financial Casualty

Company (United) removed to this Court based on diversity jurisdiction. Dkt. # 2. Turley now asks

the Court to remand this case to the District Court of Tulsa County because the notice of removal

was untimely.

## I.

This case arises out of injuries sustained by Turley as the result of a collision with a vehicle

driven by Julie Carol Stilwell. Turley deemed Stilwell to have insufficient insurance coverage for

his injuries, and he filed a claim with United, his uninsured/underinsured motorist policy carrier.

Dkt. # 2-2, at 4. United denied his claim, and Turley brought suit against both Stilwell and United.

Dkt. # 2-2, at 2. His initial petition alleged a claim for relief against United for breach of the

insurance contract; in his amended petition, he added a claim for relief for breach of the covenant

of good faith and fair dealing. Dkt. ## 2-2, 2-4. On September 23, 2010, the parties participated in

mediation, and came to an agreement on several terms. Dkt. # 11-3, at 2. As part of the agreement, Turley agreed to accept $30,000 from Farmers' Insurance Group[1] in exchange for a release of all of his claims against Stilwell. Id. Turley reserved his claims against United, but United agreed to waive all subrogation claims against Stilwell. Id. The mediation agreement stated that the signatories "intend[ed] [the agreement] to be legally binding and an enforceable settlement contract that was the result of negotiation and compromise." Id.

Turley's agreement to dismiss his claim against Stilwell was given in exchange for his receipt of $30,000. Because Turley received Medicare assistance for part of his medical treatment, a portion of the $30,000 settlement amount was required to be paid to Medicare. The settlement agreement stated that Turley would accept payment of the settlement monies within fifteen days. However, Turley did not do so,[2] and did not move to dismiss the claim against Stilwell. Dkt. # 2, at 4. On December 2, 2010, United sent a letter to counsel for both Turley and Stilwell, requesting an update as to why a dismissal of the claims against Stilwell had not yet been filed. Id. at 3. Turley responded by letter on December 13, 2010, stating that no dismissal had been filed because Medicare had not made a final determination as to the amount of the lien owed. United claims that on December 14, 2010, the day that it read Turley's letter stating his reasons for not yet dismissing his claims against Stilwell, it became "known that [p]laintiff was stalling in an effort to defeat federal court jurisdiction." Id. at 4. United then filed a motion to dismiss for failure to prosecute. Dkt. # 8-1, at 2. At a pretrial conference before the state court judge on January 10, 2011, plaintiff's

---

[1]     Farmers' Insurance Group is Stilwell's insurance carrier.

[2]     Turley says that he did not accept the money because of the parties' inability to determine the exact amount owed to Medicare, which he says is attributable to various administrative impediments within the Medicare system. Dkt. # 11, at 20-21.

counsel expressed concern about the Medicare lien, and stated that plaintiff would not dismiss Stilwell until a formal settlement agreement was memorialized and Medicare made its final determination as to the lien. Dkt. # 2, at 4. In response to plaintiff's refusal to accept payment of the settlement money because the Medicare lien was still unknown, United offered to indemnify Turley for the full amount of the lien. Id. Plaintiff's counsel said she would have to discuss the offer with her client, and the motion to dismiss was denied pending a determination on the indemnity offer. Id. at 4-5. On January 6, 2011, United received plaintiff's proposed pre-trial order in the state court action. The proposed order included plaintiff's claim against Stilwell. Dkt. # 14, at 8. The state court denied United's motion to dismiss on January 10, 2011. Dkt. # 2-45. Turley declined United's indemnification offer on January 12, 2011. Id. at 9.

United claims that the failure of Turley to dismiss Stilwell and to accept payment after the parties executed the mediation agreement shows that Stilwell's continued presence in the case is fraudulent.[3] Id. at 5-7. On January 13, 2011, United filed a notice of removal, claiming that although Stilwell remained a party to the case and the parties were therefore not completely diverse, her continued presence was attributable to fraudulent joinder and she should therefore not be considered a party for purposes of removal. Id. at 4.

---

[3]     On March 17, 2011, the parties filed a joint stipulation of dismissal of Stilwell in this Court. Dkt. # 16. However, for purposes of determining jurisdiction, the Court will consider United's arguments regarding Stilwell's presence in the action as they existed at the time of removal.

## II.

Removal to federal court is authorized for "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  District courts have original jurisdiction of all civil actions where the amount in controversy exceeds $75,000, and is between citizens of different states.  28 U.S.C. § 1332.  Section 1332 requires complete diversity, and the citizenship of all defendants must be different from the citizenship of all plaintiffs.  McPhail v. Deere & Co., 529 F.3d 947, 951 (10th Cir. 2008).  "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.  Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b).

To exercise the right of removal, a defendant must file a notice of removal "within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."  28 U.S.C. § 1446(b).  "If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  Id.  However, a case may not be removed on the basis of diversity jurisdiction more than one year after commencement of the action.  Id.  "[G]iven the limited scope of federal jurisdiction, there is a presumption against removal, and courts must deny such jurisdiction if not

affirmatively apparent on the record." <u>Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp.</u>, 149 Fed. Appx. 775, 778 (10th Cir. 2005)(unpublished).[4]

### III.

In its notice of removal, United states that the amended petition was not initially removable because the presence of Stilwell defeated the requirement of complete diversity, and that her continued presence due to Turley's failure to dismiss her as required by the mediation agreement prevented the case from becoming removable. Dkt. # 2, at 3-5. However, where an action is not initially removable, the removal period may be triggered by the receipt of a pleading or "other paper" from which it first becomes possible for the defendant to determine that the case is removable. United claims that Turley's intent to defeat federal jurisdiction became clear on December 14, 2010, when United's counsel read the letter from Turley's counsel stating why a dismissal as to Stilwell had not yet been filed.[5] According to United, the letter was the first document giving it notice that federal jurisdiction existed, and the thirty-day removal period should therefore be measured from that date. United argues that "it is undisputed that [p]laintiff and United are completely diverse," and that removal is proper under the exception to the complete diversity requirement applicable where a non-diverse defendant has been fraudulently joined. Dkt. # 2, at 5, 7.

---

[4]     Unpublished decisions are not precedential, but may be cited for their persuasive value. <u>See</u> Fed. R. App. 32.1; 10th Cir. R. 32.1.

[5]     Although the letter was sent by fax to United on December 13, 2010, United measures the removal period from the date it reviewed the letter, December 14, 2010. Dkt. # 2, at 9. Plaintiff argues that the removal period is properly measured from the date of receipt. Dkt. # 11, at 16-18. Because the Court decides this case on alternate grounds, it does not address the parties' arguments regarding on what date plaintiff's December 13 letter would have triggered the removal period.

In contrast, Turley claims that the case became removable upon the signing of the mediation agreement, in which he agreed to abandon all claims against Stilwell, the only nondiverse defendant. He argues that, at that point, Stilwell was no longer a real party in interest, and her citizenship was therefore no longer relevant to the jurisdictional question. Dkt. # 11, at 10-11. Thus, the signing of the mediation agreement began the thirty-day removal period, regardless of Turley's subsequent failure to dismiss her from the case. Id. at 10-12. The mediation agreement was signed September 23, 2010. United did not file its notice of removal until January 13, 2011, and Turley claims that the removal was therefore untimely.

**A.**

Long-established rules of diversity jurisdiction dictate that complete diversity among the parties must exist both at the time of commencement of the suit in state court and at the time the notice of removal is filed. However, an exception to this rule exists where a "plaintiff voluntarily drops from the state court action a party whose presence would defeat diversity;" in that situation, "the case becomes removable even though diversity of citizenship did not exist when the state court action was commenced." 14B Charles Alan Wright et al., Federal Practice and Procedure § 3723 (4th ed. 2008); see also Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68-69 (1996)("[i]n a case not originally removable, a defendant who receives a pleading or other paper indicating the postcommencement satisfaction of federal jurisdictional requirements – for example, by reason of the dismissal of a nondiverse party – may remove the case to federal court within 30 days of receiving such information"). The Tenth Circuit Court of Appeals has not decided whether a party's voluntary agreement to dismiss claims against a nondiverse defendant is sufficient to trigger the removal period regardless of actual dismissal of the defendant. However, many courts faced with

the issue have held that a voluntary agreement to settle claims as to a nondiverse defendant is sufficient to trigger the removal period where the agreement is enforceable under state law. See Estate of Martineau v. ARCO Chem. Co., 203 F.3d 904, 910 (5th Cir. 2000); Hanahan v. John Hancock Life Ins. Co., Inc., 518 F. Supp. 2d 780, 785-86 (D.S.C. 2007); Lesher v. Andreozzi, 647 F. Supp. 920, 921-22 (M.D. Pa. 1986); Erdey v. Am. Honda Co., Inc., 96 F.R.D. 593, 599 (M.D. La. 1983); cf. Chohlis v. Cessna Aircraft Co., 760 F.2d 901, 903 n.2 (8th Cir. 1985)(approving determination by magistrate judge that a voluntary settlement was "final enough to support removal"); State Farm Fire and Casualty Co. v. Valspar Corp., Inc., No. CIV 09-5056-JLV, 2010 WL 3834331, at * 32 (D.S.D. Sept. 24, 2010)(noting that the failure to formally dismiss a party prior to removal "is not fatal to removal"); Ray v. Craig Loftin Trailer Sales, LLC, No. CIV-09-104-JHP, 2009 WL 2175971, at * 2 (E.D. Okla. July 21, 2009)(relying on rule established in Martineau and Hanahan, but finding that because court approval is required for settlement reached on behalf of a minor, such a settlement agreement is not binding under Oklahoma law).

In Martineau, the plaintiff sued both a diverse and a nondiverse defendant. Pursuant to a settlement agreement, the plaintiff agreed to dismiss his claims against the nondiverse defendant, and counsel for the parties filed a letter with the court that listed the terms of their agreement and a suggested time and manner of performance. 203 F.3d at 909. Upon the filing of the letter with the court, the diverse defendant filed a notice of removal. The case remained in federal court, and on appeal the plaintiff argued that removal had been improper on the ground that complete diversity did not exist among the parties at the time the notice was filed because the nondiverse defendant had not yet been dismissed. The Fifth Circuit first noted that "[f]ederal courts must look to state law to determine whether removal is proper on the ground that the nondiverse defendant is no longer

effectively a party to the case." Id. at 910. The court rejected arguments by the plaintiff that the letter did not evince an intent to be bound because it contemplated future acts as yet unperformed. Instead, it found that the clear language of the letter asserted an intent by the parties to be bound, and that the agreement was not revocable under Texas law. Because the court found that the "drafting, signing, and filing of letters regarding settlement were voluntary acts" that effectively eliminated the nondiverse defendant from the litigation, it held that removal was proper. Id. at 911-12.

Similarly, in Hanahan, the complaint alleged a number of causes of action against multiple defendants, many of whom were citizens of South Carolina. During the course of the litigation, the plaintiffs dismissed or settled all of their claims against the South Carolina residents. However, when three nonresident defendants removed to federal court, the plaintiffs filed a motion to remand for lack of complete diversity of citizenship. Id. at 783. The plaintiffs claimed that because dismissal as to two of the South Carolina defendants was the result of a consent order under which those defendants had not yet fulfilled their obligations, those defendants were still parties to the case. Id. at 783-84. The court disagreed, and held that "[t]he existence of a settlement agreement that is binding and enforceable under the applicable state law constitutes a voluntary dismissal, and precludes the court from considering the citizenship of that defendant for purposes of diversity." Id. at 785. Thus, unfulfilled conditions of the order were "insufficient to make [the South Carolina defendants] a continued party in interest to th[e] litigation." Id. The court found that the plaintiffs had clearly intended to release their claims against the South Carolina defendants through the agreement, and that "[i]t would be manifestly unfair to diverse defendants . . . to allow plaintiffs to maintain nondiverse defendants with whom they had already reached a settlement as a sort of

perpetual talisman against federal jurisdiction." Id. The court concluded that because the consent order was a legally binding settlement under South Carolina law, the South Carolina defendants were no longer real parties in interest, and would not be considered for purposes of diversity jurisdiction. Id. at 786. Therefore, the motion to remand was denied. Results similar to those in Martineau and Hanahan have been reached by a number of courts that have agreed that "existence of a settlement agreement . . . enforceable under [state] law constitute[s] a voluntary dismissal of claims against [a] nondiverse defendant." Martineau, 203 F.3d at 912.

United acknowledges the existence of those decisions, but states that "federal courts have also held that a defendant must be formally dismissed before a diverse defendant may remove a case to federal court." Dkt. # 14, at 17. In support, it cites Ramirez v. Michelin North America, Inc., No. C-07-228, 2007 WL 2126635 (S.D. Tex. July 19, 2007), Bellazin v. Hayes, No. 09-458-JJB-DLD, 2009 WL 4505467 (M.D. La. Dec. 3, 2009), and Dunkin v. Chesterton, No. C 10-458 SBA, 2010 WL 1038200 (N.D. Cal. March 19, 2010). United correctly characterizes the holding in Ramirez as "allowing for removal based on fraudulent joinder, notwithstanding the fact that a non-diverse co-defendant had not been formally dismissed." Dkt. # 14, at 17. However, that holding does not support a finding that some courts require formal dismissal of a party prior to removal. The issue in Ramirez was whether a case could be removed based on the plaintiffs' statements at a deposition that they had no serious, good-faith intent to prosecute their claims against the remaining non-diverse defendant. 2007 WL 2126635, at * 1. The court noted that "[i]n order to demonstrate improper joinder based on voluntary abandonment of a claim, there need not be a formal dismissal of the non-diverse party, but the defendant must show a definite or unequivocal expression of intent to discontinue the action against the resident party." Id. at * 3. Therefore, it found that the case

became removable on the date it became clear that the non-diverse defendant was improperly joined. Id. at * 4-6. United apparently cites Ramirez to support its claim that the "voluntary abandonment" in this case did not occur until Turley's December 13 letter, which it claims also established fraudulent joinder. However, Ramirez could equally be cited in support of a holding that once the abandonment of Turley's claims against Stilwell was made clear in the mediation agreement, the case was removable regardless of actual dismissal of any party.

Bellazin also fails to support United's position. In Bellazin, a diverse defendant removed a case prior to dismissal of the remaining nondiverse defendant. On the plaintiff's motion to remand, the removing defendant argued that the plaintiff had failed to state a claim as to the nondiverse defendant. Further, the diverse defendant had previously offered to stipulate to its own sole liability, and argued that its stipulation eliminated the non-diverse defendant as a party in interest. The court found that the plaintiff had stated a claim against the nondiverse defendant, and that the stipulation offered by the diverse defendant did not impact the status of the nondiverse defendant because it had never been accepted by the plaintiff. Id. at * 4. Because an unaccepted offer of stipulation was "not a voluntary action by the plaintiff releasing a defendant," it did not create a basis for removal. Id. Here, the mediation agreement was signed and accepted by all parties, and the reasoning of Bellazin is therefore not applicable to this case.

United is correct that cases like Dunkin articulate a different outcome arrived at by California courts. In Dunkin, the court held that "[a] settlement with a non-diverse party does not establish diversity jurisdiction unless and until that party is dismissed from the action." 2010 WL 1038200, at * 2. In so holding, it noted that a "written dismissal is the only effective order the State Court can make or that is legally enforceable," and that the federal court was therefore without jurisdiction in

the absence of such a dismissal.  Id.  That conclusion is consistent with other decisions by courts in California.  See, e.g., Guerrero v. Gen. Motors Corp., 392 F. Supp. 2d 1133 (N.D. Cal. 2005).  However, while the outcome is different, the reasoning underlying the California courts' diversity determinations is the same as that of courts that have held dismissal of a nondiverse defendant not to be required prior to removal.  Courts in California have decided that, under state law, a settlement is not enforceable prior to a formal dismissal.  Thus, as dictated by the approach outlined above, they have been unwilling to find a case removable until a party has been formally dismissed.

The Court finds persuasive the rule that "[w]here plaintiff, by his voluntary act has definitely indicated his intention to discontinue the action as to the non-diverse defendant, plaintiff has indicated that he no longer desires to dictate the forum and the case then becomes removable," and that "[t]he technicality of how plaintiff's intention is expressed is of no moment – it is the expression of the intent by plaintiff which makes the case removable."  Erdey, 96 F.R.D. at 599.  To hold otherwise would give plaintiffs the power to evade federal jurisdiction simply by refusing to execute formal dismissal of a defendant.  United itself acknowledges the problems with that approach, and claims that it is "not advocating that this Court take the position that the federal district courts require formal dismissal in every instance before removal, as this Court should not allow a plaintiff to stall dismissal until the diverse defendant would no longer have an opportunity to ever remove a case to federal court."  Dkt. # 14, at 18.  Instead, United argues for a special holding in this case based on what it perceives as plaintiff's gamesmanship.  Id. at 18-19.

However, the better approach is that a binding, voluntary agreement that demonstrates an intent to dismiss all claims as to a particular defendant may eliminate a defendant as a party in interest and, consequently, from determinations of diversity jurisdiction.  See, e.g., Cunningham v.

<u>BHP Petroleum Great Britain PLC</u>, 427 F.3d 1238, 1244 (10th Cir. 2005)(citing <u>Becker v. Angle</u>, 165 F.2d 140, 142 (10th Cir. 1927)("in determining the question of diversity we look to the citizenship of the real parties in interest")). Under that rule, the Court need not rely on actions taken by a plaintiff following such an agreement, as they are irrelevant to a finding of jurisdiction. Therefore, whether such an outcome is appropriate in this case depends on whether the mediation agreement constituted a voluntary dismissal of all Turley's claims against Stilwell, and whether that agreement is enforceable under Oklahoma law.

**B.**

Based on the plain language of the mediation agreement, there appears to be no question that the agreement was voluntary. The final sentence of the agreement states that the parties "voluntarily enter into this agreement after having read and understood its terms and conditions." Dkt. # 11-3, at 2. Neither party has argued that entry into the mediation agreement was involuntary, and there is no basis upon which to make such a finding.

The agreement also includes a clear dismissal of all claims against Stilwell, and states that the parties intend it to be "legally binding and an enforceable settlement contract." <u>Id.</u> Under Oklahoma law, a "settlement agreement is a contract between the parties and it will be enforced absent fraud, duress, undue influence, or mistake." <u>Coulter v. Carewell Corp. of Okla.</u>, 21 P.3d 1078, 1082 (Okla. Civ. App. 2001); <u>see also</u> <u>Ray</u>, 2009 WL 2175971, at * 4 (under Oklahoma law, "court approval is not required for normal settlement agreements to become final and enforceable"). Thus, "[i]n the construction of settlement agreements, the Oklahoma Supreme Court has held [that] [i]f the language of a contract is clear and without ambiguity, the court is to interpret it as a matter of law. In the absence of fraud or mistake, an executed agreement of settlement is as conclusive

12

against a party seeking to avoid it as the final judgment of a court of competent jurisdiction." Vela v. Hope Lumber & Supply Co., 966 P.2d 1196, 1198 (Okla. Civ. App. 1998)(internal quotations omitted). The rules governing settlement agreements apply equally to mediation agreements. Id. The existence of a contract is a question of fact, and the "sine qua non of a binding contract" in Oklahoma is agreement on all material terms. GET, LLC v. City of Blackwell, No. 10-6068, 2011 WL 103033, at * 1 (10th Cir. 2011). Although Stilwell has not yet fulfilled the terms of payment stipulated under the contract, full performance is not required under Oklahoma law before a mediation agreement becomes enforceable. E.g., Vela, 966 P.2d at 1197-99 (enforcing mediation agreement in the face of plaintiff's refusal to comply with certain terms of the agreement).

United argues that the mediation agreement did not make the case removable under state law. It first relies for support on Coulter. Dkt. # 14, at 19. In Coulter, the plaintiff and the defendant signed a mediation agreement that outlined the financial terms of a settlement, and included language stating that the parties intended the mediation agreement to be a legally binding and enforceable settlement contract. 21 P.3d at 1080. The defendant's counsel subsequently forwarded a final settlement agreement to the plaintiff, which included a release of all the plaintiff's claims. Id. The plaintiff refused to sign the release, and filed a motion to enforce the financial terms of the settlement agreement without requiring her to execute a release.[6] Id. at 1081. Both the trial and appeals court refused to do so, concluding that the release was part of the mediation agreement, and that one part of the agreement could not be enforced without the other. Id. at 1082. Thus, the plaintiff could either execute the release or proceed to trial, but could not have the case dismissed

---

[6] As plaintiff notes, United incorrectly states that it was the defendant in Coulter that filed a motion to enforce the settlement agreement. 21 P.3d at 1081; Dkt. # 15, at 4 n.5.

without executing the release. Id. at 1084. The appeals court noted that the case was unusual in that the plaintiff was both refusing to comply with and seeking enforcement of the settlement. Id. at 1082. However, it found that if the defendant had been the party to file a motion to enforce, it could "perceive no reason" why such a motion would not have been sustained. Id.

United argues that Coulter stands for the proposition that the state court could still order plaintiff to either execute a dismissal and sign a formal settlement agreement or proceed to trial, and that the case was therefore not removable. Dkt. # 14, at 20. Coulter would support a holding that Turley could not move to enforce the mediation agreement (for instance, to receive payment) without fulfilling his obligation to dismiss Stilwell. However, the decision in Coulter that a settlement agreement is not enforceable only in part does not establish that the mediation agreement at issue is not enforceable as a whole. To the contrary, the Coulter court noted that it could "perceive no reason" why the settlement agreement in that case, which was based on a prior mediation agreement, would not be enforceable upon a motion by defendant.

United also relies upon the state court's denial of its motion to dismiss as evidence that the mediation agreement did not make the case removable. United filed a motion to dismiss plaintiff's petition in its entirety for failure to prosecute. Dkt. # 8-1, at 2. The state court summarily denied the motion to dismiss, without providing any explanation for its decision. Dkt. # 2-45. United would have the Court read that dismissal as additional proof that the state court could still allow plaintiff to proceed to trial, and that, therefore, the case was not removable upon signing of the mediation agreement. Dkt. # 14, at 20. To the best of the Court's understanding, United's argument is that denial of the motion to dismiss shows that the mediation agreement was not enforceable under state law. However, United's motion to dismiss was couched in terms of dismissing Turley's entire

petition, not enforcing the terms of the mediation agreement or dismissing Stilwell only. And the question raised by United's motion, whether failure to dismiss a party pursuant to a settlement agreement constitutes failure to prosecute under Oklahoma law, is not properly before the Court. There are numerous reasons why the state court may have denied United's motion to dismiss, and the Court will not create law regarding the enforceability of the mediation agreement based on speculation as to the state court's intent. United's arguments that the mediation agreement was not enforceable under Oklahoma law are not persuasive.

Here, the mediation agreement appears to set forth all material terms of Turley and United's release of claims as to Stilwell. As neither party has made a showing of fraud, duress, undue influence, or mistake, the mediation agreement is an enforceable contract under Oklahoma law. Thus, if the need to enforce the mediation agreement arises, means to do so exist outside the current litigation. See Hanahan, 518 F. Supp. 2d at 786. Therefore, after the signing of the mediation agreement, Stilwell was no longer a party in interest to the litigation. Upon the elimination of Stilwell as a party in interest, the case became removable on the basis of diversity jurisdiction, and the thirty-day removal period began to run from the date that the mediation agreement was signed.

Because the Court finds that the case became removable upon the date the mediation agreement was signed, it need not address United's arguments regarding fraudulent continued

joiner[7] or the calculation of the removal period based on United's review of plaintiff's December 2010 letter. Nor has United shown that Stilwell's inclusion in the case at the outset was fraudulent. A party can prove fraudulent joinder by showing that either: (1) the plaintiff's jurisdictional allegations were fraudulent and made in bad faith; or (2) the plaintiff has no possibility of recovery against the non-diverse defendant. Torres v. Cintas Corp., No. 08-CV-0185-CVE-PJC, 2008 WL 2510133, at * 5 (N.D. Okla. June 19, 2008). Here, Stilwell was a driver in the accident that caused the injuries to plaintiff that form the basis of his complaint. Plaintiff had a claim against Stilwell, which he then agreed to dismiss in exchange for payment. Thus, there is no basis for finding Stilwell was fraudulently joined.

Once Stilwell was no longer a party in interest, United had thirty days to remove the action to federal court. Because the removal period was triggered by the signing of the mediation agreement on September 23, 2010, United's notice of removal on January 13, 2011 was untimely, and the Court lacks jurisdiction.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Remand and Brief in Support (Dkt. # 11) is **granted**. The Court Clerk is directed to remand this case to the District Court in and for Tulsa County, State of Oklahoma.

**DATED** this 22nd day of March, 2011.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[7]    In support of its claim, United cites Smoot v. Chicago, R.I. & P.R. Co., 378 F.2d 879 (10th Cir. 1967), for the proposition that the "continued joinder" of a party is fraudulent where it "serves only to frustrate federal jurisdiction." Dkt. # 2, at 6. In Smoot, the Tenth Circuit noted with approval the district court's refusal to remand a case for lack of complete diversity where the non-liability of the remaining nondiverse party had been "conclusively established," and his "continued joinder" was therefore fraudulent. 378 F.2d at 882. Smoot supports the holding herein that this case was removable as soon as the nondiverse party's status was conclusively established by the mediation agreement.